Scileppi, J. (dissenting).
I would not force appellant to consent to respondent’s underletting to Textron, Inc.
Respondent occupied the 23rd floor of appellant’s building pursuant to a lease executed on June 19, 1967 for a 12-year term ending on December 31,1979, which permitted respondent’s use of the demised premises for its general and executive offices, and for similar use by its affiliates, subsidiaries and companies in which it or an affiliate has a joint venture interest. With regard to subtenancies, the lease contained a standardized clause that the tenant, its heirs, distributors, executors, administrators, legal representatives, successors and assigns would have no right to assign, underlet or encumber the leasehold or otherwise allow use of the premises by others ‘ ‘ without the prior written consent of Landlord in each instance ’ ’ and provides that “ The consent by Landlord to an assignment or underletting shall not in any wise be construed to relieve Tenant from obtaining the express consent in writing of Landlord to any further assignment or underletting.” In Article 41 of a rider to the lease, the landlord covenanted not to arbitrarily withhold consent to an underletting or assignment of the entire premises to. one tenant.
Subsequently, on April 21, 1970, respondent executed an instrument purporting to be a sublease to Textron, Inc., which was conditioned on respondent’s obtaining appellant’s written consent to the terms and conditions therein by September 1 of that year. The agreement for this proposed underletting consisted of a boilerplate form lease (the same form as the prime lease), a rider and two modifying letters signed by both respondent and Textron. Although article “ 2 ” of the lease stated that Textron was to have the 23rd floor for the executive offices of its Donahue Sales Division, a corporation which Textron had acquired in 1969, the clause had been modified *600 in one of the letters to read that: 1 ‘ Tenant shall use and occupy demised premises for executive and general offices of Tenant and Tenant’s affiliates and subsidiaries and for no other purpose.”
Relevant to the controversy before us is the following amendment to article 11 in the printed lease: “ Notwithstanding the foregoing, Tenant may, without the prior written consent of Landlord, sublet the demised premises to any corporation which is a subsidiary of or controlled by Tenant; Provided, and upon the express conditions however, at any such subletting shall be subject to all of the terms, conditions and provisions of this lease agreement and Landlord herein receives written notice of any such subletting, and provided further, that any such subletting shall not in any way release, relieve or discharge Tenant of or from or in any way modify any of Tenant’s obligations or responsibilities to be performed or observed by Tenant pursuant to any of the terms, conditions or provisions of this lease agreement.”
On May 18, 1970, appellant was asked to consent to the subtenancy. After examining- the proposed sublease and other materials evidencing Textron’s character and financial reliability, appellant concluded that it was not obliged to consent to the arrangement.
Thereafter, an attempt was made to satisfy appellant’s objections which in part focused upon the attornment clause and Textron’s subleasing powers which were claimed to be broader than respondent’s. Accordingly, respondent and Textron executed a letter dated May 27, 1970 which altered the attornment clause in the sublease, a matter which is no longer in dispute, and inserted the following provision: “1. Anything in the Sublease or elsewhere to the contrary notwithstanding, it is agreed (i) that all of the rights granted to Textron under or pursuant to the Sublease are subject and subordinate to the Prime Lease including all the terms, provisions, limitations, restrictions and conditions set forth in the Prime Lease, and that all such restrictions, limitations and conditions binding upon Filmways are binding upon Textron; (ii) that the rights granted to Textron under the Sublease are and are deemed to be no greater than the rights granted to Filmways as Tenant under the Prime Lease, and to the extent any rights granted to Textron under the Sublease are greater than or inconsistent *601 with the rights granted to Filmways under the Prime Lease, said rights shall and shall be deemed to be diminished, reduced and eliminated so as not to be greater than or inconsistent with the provisions of and the Prime Lease and the rights granted to Filmways thereunder; (iii) that Textron shall be required to secure from the Landlord under the Prime Lease any approvals or consents as a condition to the exercise of any of Textron’s rights under the Sublease which are or may be required to be secured by Filmways under the Prime Lease; and (iv) in the event that there shall be an inconsistency or conflict between any of the terms of the Sublease and those of the Prime Lease, the terms of the Prime Lease shall govern and prevail in each instance. Notwithstanding the foregoing, as between Textron and Filmways, the terms of the sublease shall be in all respects controlling.” (Emphasis supplied to indicate handwritten addendum.)
Appellant, still unsatisfied, refused to consent, and respondent instituted the action at bar. Special Term and a majority in both the Appellate Division and this court, predicating their decision on the letter amendment of May 27, an instrument which in their view cured whatever problems existing with the sublease and made its terms identical to those of the prime lease, have found appellant’s refusal to consent to be unreasonable and have granted summary judgment to respondent. I disagree. As the dissent in the Appellate Division observed, the letter did not bind appellant and was insufficient to “ strip it of its contractual right to deny the use of the leasehold to any sublessee unless occupancy was to be by a single tenant using the ‘ entire premises ’ for the limited use defined by the provisions of the lease ”. In light of the fact that the sublease contained several provisions which are broader than the prime lease (e.g., limitations on occupancy, the right to sublet) appellant was justified in withholding consent especially, where, as here, the handwritten addendum made the May 27 letter so equivocal, if not contradictory. Consequently, it is my view that appellant, and not respondent, was entitled to summary judgment.
Inasmuch as the appellant agreed that his consent to a subletting of the entire premises to a single tenant would not be unreasonably withheld, we must inquire as to whether the subletting here falls within the scope of this covenant, and if so, *602 whether the refusal was an expression of arbitrary conduct. In other words, it is well settled that where a lessor states that there shall be no subletting without his prior written consent, he retains the right ‘ ‘ to refuse arbitrarily for any reason or no reason ” (Dress Shirt Sales v. Hotel Martinique Assoc., 12 N Y 2d 339, 342); if he adds that his consent will not be unreasonably withheld, the right is tempered by a requirement of reasonableness (id ). In the case before us, appellant contracted that he would refrain from the unreasonable refusal only where the subleasing was for the entire premises and to a single tenant. Thus, if Textron was not a single tenant, appellant, possessed with the right to arbitrarily withhold consent, would be entitled to summary judgment without any additional showing.
It is clear here that the sublease constituted an attempted transfer of the entire 23rd floor; however, I am not persuaded that Textron may be deemed a single tenant. This entity is a conglomerate corporation which owns numerous other corporate enterprises. Under the terms of the sublease, Textron’s occupancy was not limited to that of its own executive and general offices. On the contrary, the amended language of article 2 of the sublease allows use by Textron’s affiliates and subsidiaries. In my view, this constituted a wider class of separate entities than those contemplated by the parties when they conditioned appellant’s right to withhold consent on occupancy by a single tenant. Although the main lease allowed respondent’s affiliates and subsidiaries to use the premises, appellant bargained for and obtained the right to withhold consent if respondent attempted to grant a similar right to a third party. I see no reason why this valuable right should not be enforced.
However, even assuming that Textron was a single tenant, appellant has amply demonstrated that its refusal to consent was reasonable. The terms of the sublease evidences an intent by respondent and Textron to fashion rights in the sublease which were greater than those conveyed to respondent in the prime lease. The sublease would authorize use of the premises or parts thereof by Textron’s affiliates and subsidiaries and permitted subsequent subleases by Textron without respondent’s consent thus creating a possibility of multiple tenancies. Since appellant had retained, in the prime lease, the right to limit use by those other than respondent, consent of the sub *603 lease could conceivably constitute a waiver of valuable property rights safeguarded in the prime lease (see Woollard v. Schaffer Stores Co., 272 N. Y. 304; cf. Sillman v. Twentieth Century-Fox Film Corp., 3 N Y 2d 395, 402-403). The letter of May 27 does not militate against this conclusion. Although it undoubtedly indicates an ameliorative attempt, it falls far short of its objective and does not conform the sublease to the terms of the prime lease. On the contrary, it suggests a probability that Textron would exercise some of its prerogatives under the. sublease and thereby involve appellant in future litigation. Under these circumstances, appellant was not bound to consent, (see Time, Inc. v. Tager, 46 Misc 2d 658, 659-660).
Accordingly, the order appealed from should be reversed and appellant’s cross motion for summary judgment granted.
Order affirmed, etc.